(46 South. 571.)

No. 16,539.

DA PONTE v. BRETON et al.

(May 11, 1908.)

CORPORATIONS — SUBSCRIPTION FOR STOCK—ACTION—PLEADING.

Where, in written communications, following verbal negotiations, between promoters of a corporation and an alleged subscriber to the capital stock, the latter is given and accepts the character of an applicant for stock, whose application has not been accepted, there is no contract, and a petition predicated upon such written communications and verbal negotiations, and praying judgment against the promoters for the stock applied for or damages, discloses no cause of action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 209.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by H. Da Ponte against Albert Breton and others. Judgment for defendants, and plaintiff appeals. Affirmed.

William Stirling Parkerson, for appellant. Denègre & Blair, Dart & Kernan. Hall & Monroe, Gustave Lemle, and Lyle Saxon, for appellees.

## Statement of the Case.

MONROE, J. The judge a quo dismissed this suit upon an exception of "no cause of action," and plaintiff has appealed.

The allegations of the petition, necessary to be considered, are:

"That * * * Albert Breton and Felix J. Dreyfous verbally solicited petitioner to subscribe to the capital stock of the German-American National Bank, then in course of organization; that, acting upon their solicitation, pe-

titioner subscribed to 40 shares of the said capital stock; that, in confirmation of said verbal transaction, the following correspondence took place:

"'German American National Bank,
"'New Orleans, July 6, 1905.

"'Dear Sir: Referring to your application for stock in the above bank, we shall thank you to fill and sign the inclosed slip and return it by first mail to the undersigned. Thanking you for your very prompt attention, we remain,
"'Very truly yours,        Albert Breton.
"'F. J. Dreyfous.'

"'New Orleans, July 6, 1905.
"'Messrs. Breton and F. J. Dreyfous, P. O. Box 653, New Orleans, La. ·

"'Dear Sir: Kindly place on the subscription list of the German-American National Bank my name for 40 shares, at $150 a share, being $100 par value and $50 surplus, subject to allotment by the organization committee. I bind myself to pay for this stock on the call of the organizers.                    H. Da Ponte.'

"Petitioners allege that the said Albert Breton and Felix J. Dreyfous acted for, on behalf of, and were authorized by, the organization committee referred to in said subscription paper; * * * that in spite of the fact that he was among the first who subscribed, * * * he was not allotted a single share, and that others who subscribed subsequently to petitioner and after the lists were completed, were allotted the full amount of their subscriptions; that there was no equitable allotment whatever, and that the said organization committee, disregarding every principle of right and fair dealing, excluding petitioner entirely, took unto themselves an inordinate proportion of said capital stock, to his great loss and to their gain; that petitioner was ready, willing, and able to pay for said stock, and that he could have sold the same for $240 a share, realizing a profit of $90 a share, or $3,600, for the amount subscribed for by him."

He alleges that the members of the organization committee, whom he names, should be compelled to let him have 40 shares of the stock allotted to them, or else pay him the difference between the price at which he subscribed and the highest value reached by said stock, say $90 per share, or $3,600, and he prays for judgment accordingly.

### Opinion.

Whether the petition discloses a cause of action depends upon whether the allegations concerning the plaintiff's dealing with Breton and Dreyfous set forth a contract. It is not alleged that plaintiff was offered, or asked to subscribe for, any particular number of shares. He was merely solicited to subscribe, and the offer, so far as the number of shares was concerned, was left to him. If he had offered to take all the stock, it can hardly be supposed that he would have expected to bind the defendants, or any of them; from which it follows that he must have made his offer with the understanding that it would bind no one until accepted; but it is not alleged that there was any acceptance.

The verbal negotiations were, however, superseded by the subsequent dealings in writing; for it can hardly be contended that, where a party to an alleged contract has signed a written instrument in which his position is stated, he can refer back to an antecedent conversation as controlling the matter. It must be conceded, too, that the instrument signed by the plaintiff in this case is to be construed with reference to that to which it was an answer, and the latter begins, "Referring to your application for stock," etc., to which no exception was taken. On the contrary, plaintiff, accepting the position of an applicant for stock, signed "the inclosed slip" and asked to be placed on the books as a subscriber for the number of shares for which he had verbally applied. It seems clear, then, that as defendants in their written communication treated the verbal negotiation with plaintiff as a mere application on his part, as plaintiff accepted and acted in writing on that construction, and as he alleges that the correspondence was confirmatory of the previous "verbal transactions," the effect of the correspondence, which is the last communication alleged, was merely to confirm an application for stock; and upon that subject this court, in a recent case against the same defendants and predicated upon facts differing but slightly from those here presented, has said:

"A mere application, or offer to subscribe, carries with it no obligation on the part of the person to whom it is made to grant it. The promoters had not, in this case, in advance of the application, bound themselves to accept it, if and when made. There is no allegation or claim that they had done so. The slip, when returned to Breton and Dreyfous, was not, in itself and by itself, a subscription, but retained its character as an application." Feitel v. Dreyfous, 117 La. 763, 42 South. 259.

Counsel for defendant dwells somewhat upon the fact that in the Feitel Case it appeared that the plaintiff in his conversation requested the solicitor to subscribe for $50,000, but signed the application for $15,000 worth of the stock. This, however, appears to us to be immaterial; the material point being that in the Feitel Case, as in this case, there was nothing more than a verbal application, confirmed by a written application neither of which was accepted, so that in neither case was there any contract. Civ. Code, art. 1798.

Judgment affirmed.