No. 4670.

(Court of Appeal, Parish of Orleans.)

**U. MARINONI, JR., Receiver, Etc. vs. ANDREW E. SCHIRO.**

G. M. Hornor for plaintiff and appelle.

L. Charbonnet, Dart & Kernan for defendant and appellant.

ST. PAUL, J.—Plaintiff sued on an alleged subscription for capital stock in a corporation. The corporation being insolvent, the suit is for the benefit of creditors. The instrument sued on is annexed to the petition and defendant answered that "he owed plaintiff nothing." Thereafter he answered that his signature to the document was obtained by certain false representations touching the conditions of the finances, the officers to be appointed, etc.

That part of the defense based on defendant's signature having been obtained by alleged fraudulent representations is not presently urged, and the first question that occurs herein is what evidence is defendant permitted to adduce?

We consider that an answer to a suit on a written instrument, that "defendant owes nothing" is in effect an admission of his signature, coupled with a "general denial." Defendant may, therefore, produce proof which may tend to rebut the facts which plaintiff must establish in order to recover.

But it is clear that even in a suit for the benefit of creditors an alleged subscriber for stock cannot be held liable unless there was at some time a contract binding on himself and the other party thereto, or one must show an estoppel of some sort. Therefore, in order to recover, plaintiff must show either that the document sued on constitutes the acceptance of an offer made to him by some one authorized to make such offer, or that it is itself an offer which was accepted in due season by some one duly authorized to that effect. Otherwise he must show that defendant has, by some act, failure or neglect. of his, cut himself off from the right to deny either proposition.

This being our appreciation of what one party must show and the other party may dispute, we think the

statement of facts on file proper evidence in this case.

We hold that the document sued on is a mere conditional offer by defendant to subscribe to the capital stock of a corporation thereafter to be formed which has never been accepted; and we are of this opinion because it is legally impossible for this document to be anything else.

It will be observed that the instrument reads: "I hereby agree to subscribe," etc. But, granting that the terms had been: "I hereby subscribe," etc., it would still make no difference.

In this State a corporation can be formed only by the agreement of a number of persons (not less than three), who must execute and record a written instrument by which they "form themselves into and constitute a corporation." (Rev. Stat., Arts. 683, 684, 685, 686.) This written instrument or "charter" must contain certain provisions mentioned by law, and essential to the very life of the corporation, upon which the parties must, of course, agree. This written agreement is a contract between the parties who thus "form themselves into a corporation." It represents their final agreement; it must be reduced to writing; it is in contemplation from the very moment the parties first begin to negotiate with each other with the object of forming a corporation. But where an agreement must be reduced to writing, or where a written agreement is in contemplation of the parties, it is well settled, as the law of the State, that there is nothing binding on anyone until the writing is executed; **non constat** that the parties will ever agree on the terms of the written instrument, for instance, on the form, the substance and the details of certain provisions which every charter must contain, as above stated.

This charter then becomes a contract between all the members of the corporation, and it is the first and only

contract between them at the time of the formation of the corporation.

But if the charter be a contract between all the members of a corporation (and who doubts it), only those are members of the corporation who, either at the time of the execution thereof, or afterwards, yield their consent, express or implied, to that charter, for no man can make a contract for another.

Hence, no man can be a member of a corporation unless he yield his consent expressly, by signing the charter or authorizing another to do so in his behalf, or impliedly, by raising no objection to his name appearing therein as a member of said corporation or a subscriber to its capital stock; or afterwards, by paying for his stock, accepting certificates therefor, or holding office in the corporation, or doing something of that sort.

But since no man's consent can be forced, no man need yield his consent to any contract the terms of which are not satisfactory to him in their entirety, nor even then unless he wishes to do so. Nor can a man be bound to contract with any persons but those with whom it pleases him to do so. Hence, a man may refuse to sign a contract, with which he is otherwise satisfied, simply because another person is to be a party to the contract. In other words, all the parties to a contract must be satisfactory to each other, and all the terms thereof must be satisfactory to all the parties.

So that no one need become a party to a contract unless all the terms thereof and all the other parties thereto be satisfactory to him. On the other hand, he cannot force himself upon the other parties if they do not wish to have him.

Hence, it follows that a subscription to the capital stock of a corporation thereafter to be formed under the laws of this State is not complete until the charter is

executed and is always conditional upon the provisions of that charter being acceptable to the subscriber, and the subscription being acceptable to the signers of the charter.

For the subscriber cannot be a member of the corporation without being bound by the charter; the charter cannot be binding on anyone until finally executed; the individual cannot be bound by the charter unless he yields his consent, express or implied; and no one can force himself upon parties to a contract who are unwilling to receive and contract with them.

It is our conclusion, therefore, that the charter and original list of subscribers constitute the only evidence of original membership in the corporation, or original subscription to the capital stock thereof unless one has so conducted himself after the formation of the corporation that he is estopped from contesting the fact of such membership and subscription; as, for instance, by paying upon the subscription, although not annexed to the charter, by knowingly allowing his name to be recorded in the mortgage office for a subscription not included in the list annexed to the charter, by accepting certificates of stock or holding office in the corporation and doing other things of that nature.

And we use the words "after the formation of the corporation" advisedly and ex industria because we are speaking of liability as a subscriber to the stock, not of the individual liability which one might incur, by his acts or representations, towards other subscribers (or other persons) with which we are not now concerned. The **Feitel** and **Daponte** cases, **117 La. 756,** and **121 La. 454,** dealt exclusively with an issue of that sort, and though nothing in those cases conflicts in any way with what we have said above, they have no bearing whatever on this controversy.

For before the execution of the charter and formation

of the corporation, there can be no creditors of the corporation, at least none with **vested** rights, since **non constat** that the corporation will ever be formed, hence not a single subscription to the stock may ever become binding under any possible conception of the character of a subscription to take stock. Besides, as we have said, any man has the right to refuse to go into the corporation, and has no right to complain if he be excluded from membership when the corporation is formed.

And there is not only law but equity for this. A man may take a leading part in an effort to organize a corporation, may be willing to subscribe every dollar he may have or be able to beg or borrow, and risk it all because it is agreed that he is to be an officer therein, to earn a salary and to have some supervision over its operations. At the last moment, the others "freeze him out," as the expression goes. Has he no right to refuse to risk his all, and the money of his friends, or must he still do so, without the salary on which he depended to reimburse his creditors, and without the chance to supervise the operations of the corporation on which supervision he relied for the safety of his investment. We think he has a right to refuse to be further bound in the matter, and, if he decline to sign the charter and decline to permit his name to appear on the list of subscribers to the capital stock, what creditor giving credit on the faith of the charter and those subscriptions can complain? Is not the mere fact that his name does not appear on the list of subscribers sufficient to put them on their guard as to the fact that he is no longer connected with the enterprise? And where, except in the charter, and in the public records, are they to look for the subscriptions, on the faith of which subscriptions it might be said they gave credit to the corporation.

Now the case at bar itself furnishes the best illustra-

tion of the correctness of the foregoing views. Plaintiff agreed to subscribe, or, let us say, subscribed to the capital stock of a corporation thereafter to be formed. As a subscriber for stock he was one of the persons who were about "to form themselves into a corporation." He had the right to be present and sign the charter. Had he not also the right to insist that such representations as had been made to him, if any, be carried out; and was not his consent as necessary as that of all the others to all those details which the charter must necessarily contain, for instance, the number, powers and duties of the officers, and the time and manner of appointing them, matters of some importance one would think?

Again the law requires that the charter shall state how, and on what terms, the stock shall be paid. Had he not the right to insist that these terms should correspond with the terms of subscription, and if this was refused, was he still bound by the charter, as every member of the corporation needs must be, notwithstanding that he then refused to sign the charter or allow his name to appear thereon as a subscriber on the terms fixed by the charter?

Or, supposing that he were not present when the charter was signed, would his consent thereto be implied by the fact that he signed a subscription for stock, nothwithstanding that the terms of payment mentioned in his subscription did not correspond with the terms fixed in that charter?

But that is exactly the case at bar. Plaintiff signed an agreement to take stock in a corporation thereafter to be formed for which he was to pay in equal installments of 25% each. The first on August 31st, and one every thirty days thereafter. So that he had until September 30th to pay the second installment, until October 30th to pay the next, and until November 29th to pay the last installment.

And yet on September the 26th (the day the charter was signed) he might, according to the charter, have been called upon to pay the whole amount at once. For the charter makes the stock payable on demand; that is the effect of the words used.

It might be urged that if the Board of Directors called upon him for payment only in accordance with the terms of his subscription, he would have no cause to complain. That might be true if he had yielded his consent to the charter as well as signed the subscription. Then it might be said that there was a conflict between the two contracts, or more properly speaking between the two parts of the same contract, for the subscription list forms part of the charter. It would be merely a matter of reconciling the two conflicting clauses which, of course, could be done that way.

But that is not the question here. Defendant did not sign the charter and his name is not included in the list of subscribers thereto annexed. The question is can his consent to that charter, with the terms of payment fixed on demand, be inferred from the fact that he signed a subscription for stock payable on terms entirely different from the terms of the charter? To infer a thing is to hold that there is a presumption either of law or of fact that the thing is so. And we think that the circumstances stated raise no such presumption, but rather the reverse. For we have proof that at least one provision of the charter did **not** have his consent, and consent to validate a contract must cover the **whole** of it, not merely a part. We do not think that a subscription, even when payable on the same terms as those fixed in the charter, evidences a consent to the charter as a whole, unless annexed to the charter and allowed to remain there without protest, but it is the fact of allowing it to remain so annexed without protest, and not the mere signing of it,

that raises the presumption of consent to the charter.

On the other hand, the fact that the signers of a contract did not include defendant's name in the list of subscribers is evidence conclusive that he was not agreeable to them as a member of the corporation, and that his subscription was not wanted. The fact that they never placed his name upon their books as a stock-holder or subscriber, and never made any demand upon him to pay his subscription until the corporation had ceased doing business and acknowledged its insolvency is only cumulative evidence to the same effect.

It was undoubtedly their right to act exactly as they did, but, having exercised it, the consequence was necessarily that defendant was under no obligation to pay for any stock since they were under no obligation to deliver any to him. We are of opinion that defendant is not now, and never was, bound by any contract to pay for any stock in the corporation, and the only question now remaining is whether he has done anything by which he has estopped himself from setting up that defense.

The statement of facts on file shows that defendant, beyond signing the document herein sued on, had nothing whatsoever to do with the corporation or its affairs.

He took no steps, however, to demand of the corporation the return of the document herein sued on. In the first place it is not shown that he knew that this document was in the hands of the corporation. He had delivered it to Loyacano, by whom he was asked to subscribe, but had heard nothing more about it. The charter and list of subscribers on record in two public offices and published in the press did not indicate that he was a subscriber for any of the stock, indeed the stock of the corporation was payable on terms different from those on which he had agreed to subscribe. He had a right to

assume that his offer to subscribe was not acceptable to the other persons who had "formed themselves into a corporation," and the whereabouts of a valueless piece of paper was immaterial. No demand had ever been made upon him, no stock had ever been tendered him, and he had no reason to suppose that his subscription, rejected at the time when the chances of success were balanced against the chances of failure, had been carefully put away for possible use in some future emergency.

We fail to see wherein this constitutes an estoppel as to defendant.

Of course, it is needless to say what we have said has no application to corporations already organized when the subscription is signed (whether by special legislative act or under general laws); for then a subscription, if accepted by the corporation, already in existence, constitutes a contract at once binding on the corporation and subscriber, and an immediate acceptance of the charter by the latter.

We are of opinion that plaintiff cannot recover herein, and that there is error in the judgment of the Court a qua and in our former decree.

The previous decree is now set aside and it is now ordered that the judgment appealed from be reversed and defendant have judgment in his favor rejecting the demand of plaintiff at his costs in both courts.

January 10, 1910.

Rehearing refused, January 24, 1910.

Writ refused by Supreme Court February 28, 1910.