(64 South. 670.)

No. 20,344.

VERMILION SUGAR CO. v. VALLEE.

In re VALLEE.

(Feb. 2, 1914. Rehearing Denied March 16, 1914.)

*(Syllabus by the Court.)*

CORPORATIONS (§ 83*)—STOCK SUBSCRIPTION—ENFORCEMENT AFTER REVOCATION.

In a suit by a corporation against a subscriber to its stock before its organization, which subscriber had withdrawn his subscription before organization and his offer to subscribe had been accepted by the corporation, there will be judgment dimissing plaintiff's demand.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 328–336; Dec. Dig. § 83.*]

Action by the Vermilion Sugar Company against Louis Vallee. A judgment in the district court dismissing plaintiff's demand was reversed by the Court of Appeals, and defendant applies for certiorari or writ of review. Reversed and rendered.

Kitchell & Bailey, of Abbeville, for relator. Minos T. Gordy, Jr., of Abbeville, for respondent.

SOMMERVILLE, J. Plaintiff, in its petition filed in the district court against defendant, alleged that defendant entered into—

"a written contract and agreement to subscribe for said purpose [to build and complete a sugar refinery at or near the town of Abbeville] to the amount opposite his name on said agreement, in a company to be organized by said parties for the said purpose, and to pay the same on such sums and conditions as might be decided on by the board of directors of such company; * * * that, after said corporation was duly organized, the board of directors thereof received and accepted the said contract signed by said defendant, and fixed the terms and conditions for the payment of stock subscriptions thereto as follows; * * * that, immediately upon the organization of the said company, many verbal demands were made on the said Louis Vallee, defendant herein, to settle and pay his said stock subscription therein in accordance with the terms and conditions fixed by the board of directors thereof as aforesaid; and that, finally, a written demand was made on the said defendant through petitioner's attorneys, Gordy & Gordy, to pay his said stock subscription, but all of said demands were made in vain; that said stock subscription is due and unpaid."

Defendant answered, admitting that he had signed the document purporting to be signed by him and others, and declared on in plaintiff's petition, but averred that the same constituted a mere offer on his part to subscribe to the capital stock of a corporation which was not in existence, but which was to be formed thereafter, which offer defendant was at liberty to withdraw, and did withdraw and revoke prior to the alleged acceptance of said offer by the alleged corporation, plaintiff herein; that he had notified the promoters of the formation of the said corporation that he then and there revoked and withdrew said offer to subscribe to the organization of said company.

There was judgment in the district court dismissing plaintiff's demand, which was reversed by the Court of Appeals.

Defendant now invokes the supervisory jurisdiction of this court, and asks that the judgment of the Court of Appeals be set aside, and that the judgment of the district court be reinstated, and made the final judgment in the cause.

It appears that there were several petitions circulated and signed in the parish of Vermilion; one of them being signed by the defendant here, which reads as follows:

"We, the undersigned citizens of the parish of Vermilion, state of Louisiana, do hereby agree and bind ourselves to pay the amount opposite our respective names, for the purpose of erecting, completing and operating a sugar refinery at or near the town of Abbeville, in said parish and state, said amount to be paid to a corporation to be organized for said purpose by L. A. Moresi, of Jeanerette, La., and some of the merchants of the said town of Abbeville, and the farmers adjacent thereto, the said subscription to such corporation aforesaid shall be paid at the time and on such terms and conditions as may be decided by the board of directors thereof. Shares to be one hundred dollars each."

The foregoing document, here sued upon by plaintiff and declared upon in its petition,

is alleged to be "a written contract and agreement to subscribe for said purpose to amount opposite the name on said · agreement in a company to· be organized by said parties for the said purpose"; that the company had been organized; that the subscription made by defendant was received and accepted by it (the company); that the terms of payment of stock subscriptions were adopted; and, further, that it had made demands upon defendant "to pay his said stock subscription"; "and that the said stock subscription is due and unpaid."

In this court plaintiff abandons the position assumed by it in its petition in the district court that the defendant had subscribed for stock in a corporation to be formed, and in which position defendant, in his answer, had agreed with plaintiff, and it now argues:

"Hence we see that, while it is true that the contract states further on that payment of the subscription shall be made to a corporation to be organized by Moresi and others, merchants and farmers, the stock feature of the contract was a secondary· matter, while the thing to be accomplished, and for which each subscriber contributed his promise to pay, was the erection of a refinery; it was the essential, only and main purpose of the undertaking. * * * Relator's citations refer exclusively to stock subscriptions only, and the right to withdraw them; while ours refer to cases involving mutual promises between a number of persons, all alike interested in the building of a sugar refinery, a joint mutual undertaking. * * * That the contract between the subscribers is a valid and binding one from which the subscribers cannot withdraw at pleasure. * * * We think that the law in the cases under discussion makes a clear difference between the rights of subscribers to the stock of business corporations, and the rights of subscribers to a subscription paper, such as the one sued on in this case."

That the document sued upon is a subscription to stock of a corporation to be organized is clear from the pleadings in the case, the document sued upon, as well as from the testimony of Mr. L. A. Moresi, of Jeanerette, La., who was declared in the subscription blanks, signed by the defendant, to be the person, with others, to organize the plaintiff corporation; he testified as a witness:

"We all said in the strongest language that we could use that, if a board of 15 should be selected, we would then and there have no more to do with the proposed company."

Mr. Moresi, one of the promoters and organizers of the corporation, at a meeting of subscribers before the organization, declared, with others, that he and they had the right to withdraw his or their subscriptions, and would do so, if their demands were not complied with. It appears to have been the· understanding of all the subscribers that they might withdraw their subscriptions before the company was organized and their offers to subscribe had been accepted.

We are asked by defendant to decide the question:

"Does not the instrument sued upon exhibit a mere offer on the part of the signers thereof to subscribe to the capital stock of a corporation to be formed in the future, and, as such, revocable by the subscribers before the organization of the corporation?"

And plaintiff has answered the question propounded as follows, in its brief:

"An offer to become a shareholder in a corporation to be formed thereafter, may undoubtedly be revoked at any time before acceptance, whether the offer accompanies a contract or not. But a mutual agreement to become shareholders or to· subscribe for shares is binding between the parties as a contract, and cannot be revoked. Morawetz, Private Corporations, vol. 1, § 50."

But Mr. Morawetz continues in section 50· as follows:

"There is, however, a difficulty in enforcing the execution of a contract of this description. It is evidently the intention of the parties that the promise of each of them shall inure to the· benefit of the corporation when formed, and not to the benefit of the individual parties themselves. Justice would therefore be best attained by enforcing a specific performance of the· contract on behalf of the corporation, or by allowing the corporation to sue upon it. There is a serious objection to this course on the ground that the corporation was not itself a party to· the contract."

And the difficulty suggested by Mr. Morawetz exists in the law of this state. Article 1798, C. C., provides that:

"As there must be two parties at least to every contract, so there must be something proposed by one and accepted and agreed to by another to form the matter of such contract; the will of both parties must unite on the same point."

In the case of Feitel v. Dreyfous, 117 La. 756, 42 South. 259, where a similar matter was under consideration, the plaintiff there having subscribed for a certain amount of stock in a corporation to be formed, and the corporation, after having been organized, having refused to issue the stock subscribed for, we say:

"Defendant quotes Lord Cairns, L. J., laying down the principle in Re Richmond Hill Co., Pellot's Case, L. R. 2 Ch. App. 527–534, that, 'where an individual applies for shares in a company, there being no obligation to let him have any, there must be a response by the company, otherwise there is no contract,' and quotes the syllabus of In re National Savings Bank Association, Hebb's Case (1867) 4 Eq. 8, to the effect that 'a proposed contract is not binding on the party who proposes it until its acceptance by the other party has been communicated by him or his agent.' H. applied in writing for ten shares in a company, and the directors alloted to him ten shares. After the allotment, but before it was communicated to H., he withdrew his application. Held, that he did not agree to accept the shares.

"In the Matter of the Universal Banking Co., Gunn's Case, L. R. 3 Ch. App. 40, Sir John Robb, L. J. is reported as saying:

" 'There must be the consent of two parties to a contract. One man may make an offer to another and say, "I agree to buy your estate," but the person to whom he has made the offer must say, "I agree to sell you the estate," or he must do something equivalent to an acceptance; something which satisfies the court, either by words or conduct, that the offer has been accepted to the knowledge of the person who made the offer. I think that is requisite in the case of an application for shares just as in the case of any other contract.' * * *

" 'An offer to become a shareholder when accepted by and on behalf of the other members of the company constitutes the offerer a shareholder. Thus when an allotment of shares is required before an applicant becomes a shareholder, an application for shares is a mere offer, and the offer ripens into a contract as soon as the allotment has been made and notice thereof sent to the applicant.' Section 46.

" 'An offer to become a shareholder in a corporation to be formed thereafter may undoubtedly be revoked at any time before acceptance, whether the offer accompany a contract to take shares or not. But a mutual agreement to become shareholders, or to subscribe for shares is binding between the parties as a contract, and cannot be revoked.' Section 50.

" 'It is clear that the contract of membership in a corporation, like any other contract, cannot be created without mutual consent of the parties.' Section 62."

And we hold that plaintiff was not entitled to relief. See, also, Da Ponte v. Breton, 121 La. 454, 46 South. 571.

And Professor Collins, of the Cornell Law School, is quoted on the matter of mutual agreements to become shareholders to the following effect:

"A preliminary agreement to form a corporation and take stock therein is not a contract by the subscribers with each other, and cannot be enforced by one or more against another, but only by the corporation.

"Such an agreement, not made as a step authorized by statute in the process of forming the corporation, is a mere offer to the corporation not yet in existence, and is revocable by any subscriber until the birth of the corporation, which operates as an acceptance of the offer, and thereafter the subscription, if not previously revoked, is irrevocable, and may be enforced by the corporation."

This right to withdraw a subscription for stock in advance of the organization of the corporation to be thereafter organized is concurred in by the following text-writers: Thompson on Corporations, §§ 1170, 1172; Elliott on Private Corporations, § 98; Taylor on Private Corporations, § 92; Marshall on Private Corporations, § 244.

In this case the plaintiff is not, and does not represent, one of those who subscribed for stock at the same time with defendant. It is not claiming mutuality of agreement among subscribers. The plaintiff was not a party to the subscription of stock made and withdrawn by defendant; and it cannot therefore be heard in the courts to demand a compliance with that subscription by defendant.

There is no allegation that one or more subscribers to the stock have transferred to plaintiff any contract rights which they may have had against the defendant. Plaintiff de-

clares that it, itself, has accepted a contract with the defendant, and it sues thereon.

In the well-considered and often referred to case of Bryant's Pond Mill Co. v. Felt, 87 Me. 234, 32 Atl. 888, 33 L. R. A. 593, 47 Am. St. Rep. 323, in considering the question before us now, it is said:

"The only question we find it necessary to consider is whether a subscriber to the capital stock of an unorganized corporation has a right to withdraw from the enterprise, provided he exercises the right before the corporation is organized, and his subscription is accepted. We think he has. Such a subscription is not a completed contract. It takes two parties to make a contract. A nonexisting corporation can no more make a contract for the sale of its stock than an unbegotten child can make a contract for the purchase of it.

"The right of subscribers to the capital stock of a proposed corporation to withdraw their subscriptions at any time before the organization of the corporation is completed has been affirmed in several recent and well-considered opinions. The right rests upon the impregnable ground of the legal impossibility of completing a contract between two parties, only one of which is in existence. There can be no meeting of the minds of the parties. There can be no acceptance of the subscriber's proposition to become a stockholder. There can be no mutuality of rights or obligations. There can be no consideration for the subscriber's promise. As said in one of our own decisions, it is a mere nudum pactum— a promisor without a promisee; a contractor without a contractee. In fact, every element of a binding contract is wanting. If the subscriber's promise to take and pay for shares remains unrevoked till the organization of the proposed corporation is effected, and his promise has become accepted, then we have all the elements of a valid contract: Competent parties; mutuality of duties and obligations; a valid consideration, the promise of one party being a sufficient consideration for the promise of the other; a promisee, as well as a promisor; a contractee, as well as a contractor. In fact, all the elements of a valid contract are present, and the subscription has become binding upon both of the parties. But, till the corporation has come into existence, all these elements are necessarily wanting, and the subscriber's promise amounts ·to no more than an offer, which, like all mere offers, may be withdrawn at any time before acceptance. When accepted, it becomes binding. Till accepted, it remains revocable. This conclusion is sustained by reason and authority.

"In Starrett v. Rockland F. & M. Ins. Co., 65 Me. 374, the plaintiff sought to recover a portion of the dividends of a successful insurance company. He had subscribed for five shares of the stock before the organization of the company was effected, but the evidence of acceptance of his subscription by the corporation after its organization was not satisfactory, and the court held that, without such acceptance, there was no completed or binding contract; that the minds of the parties never met; that the plaintiff's subscription, being made before the corporation came into existence, amounted to no more than a proposal to take so many shares, a mere nudum pactum, imposing no obligation, and securing no rights.

"And in Carr v. Bartlett, 72 Me. 120, the right of subscribers to withdraw from such undertakings while they remain inchoate and incomplete is recognized and affirmed.

"In Muncy Traction Engine Co. v. Green, 143 Pa. 269 [13 Atl. 747], decided in 1888, the defendant had been active in procuring subscribers to the capital stock of a proposed corporation, and had himself subscribed for 20 shares; but he wrote to the chairman of the meeting for the organization of the corporation that, for reasons satisfactory to himself, he withdrew his subscription. The court ruled that the defendant had a right to withdraw his subscription at any time before the organization of the corporation was completed; and, the jury having found, as a matter of fact, that the withdrawal was before the organization of the corporation was completed, a verdict for the defendant was affirmed, and judgment rendered thereon.

"In Hudson Real Estate Co. v. Tower (1892) 156 Mass. 82 [30 N. E. 465, 32 Am. St. Rep. 434], the action was founded on a subscription to the capital stock of an unorganized corporation, and the defense was based on an alleged withdrawal of the subscription. The right to withdraw was controverted. The court held that, at the time when the defendant signed the subscription paper declared on, it was not a contract, for want of a contracting party on the other side; that, while such a subscription may become a contract after the corporation has been organized, still, until the organization is effected, and the subscription is accepted, it is a mere proposition or offer, which may be withdrawn, like any other unaccepted proposition or offer.

"It is urged by the counsel for the plaintiff corporation that such subscriptions create binding and enforceable contracts between the subscribers themselves and are therefore irrevocable, except with the consent of all the subscribers; and some of the authorities cited by him seem to sustain that view."

In the course of the above opinion, the court referred to former decisions of its own, as well as to decisions in the states of Pennsylvania and Massachusetts. And, commenting on said cases, the Supreme Court of Alabama, in Planters' & Merchants' Independent Packet Co. v. Webb, 156 Ala. 551, 46 South. 977, 16 Ann. Cas. 529, and after making the

decision of the Maine court a part of its own decision, refers to the reports in the states of Alabama, Connecticut, Delaware, New Hampshire, and Vermont holding to the same effect.

The decisions of the various courts of the states have not been uniform on the point; but the weight of authority and reason hold that a subscription list like the one signed by defendant is a promise on his part to subscribe for stock; and that he did not enter into an irrevocable contract with any one, and specially with the corporation not yet formed, which could not be revoked or withdrawn by him before the organization of the company. This was the view taken by the subscribers to organize the plaintiff corporation at a meeting held prior to such organization, although the corporation which they have organized would now deny that right to defendant.

It is therefore ordered, adjudged, and decreed that the judgment of the Court of Appeals in this case be annulled, avoided, and reversed, and the judgment of the district court be reinstated and made the judgment of this court; costs to be paid by the plaintiff company in all courts.

PROVOSTY, J., being absent on account of illness, took no part.

(64 South. 673.)

No. 20,345.

VERMILION SUGAR CO. v. STELLY.

In re STELLY.

(Feb. 2, 1914. Rehearing Denied March 16, 1914.)

Action by the Vermilion Sugar Company against John Stelly. The Court of Appeals reversed a judgment for defendant, and he applies for certiorari or writ of review. Reversed and rendered.

Kitchell & Bailey, of Abbeville, for relator. Minos T. Gordy, Jr., of Abbeville, for respondent.

SOMMERVILLE, J. For the reasons assigned in the case entitled Vermilion Sugar Company v. Louis Vallee, In re Louis Vallee, Applying for Certiorari or Writ of Review to the Court of Appeals, Parish of Vermilion, State of Louisiana, 64 South. 670, ante, p. 661, and numbered 20,344, this day decided.

It is ordered, adjudged and decreed that the judgment of the Court of Appeals in this case be annulled, avoided, and reversed, and the judgment of the district court be reinstated and made the judgment of this court; costs to be paid by the plaintiff company in all courts.

PROVOSTY, J., being absent on account of illness, took no part.

(64 South. 673.)

No. 20,347.

VERMILION SUGAR CO. v. MONTAGNE.

In re MONTAGNE.

(Feb. 2, 1914. Rehearing Denied March 16, 1914.)

Action by the Vermilion Sugar Company against R. J. Montagne. Judgment of district court for defendant was reversed by Court of Appeals, and defendant applies for certiorari or writ of review. Reversed and rendered.

Kitchell & Bailey, of Abbeville, for relator. Minos T. Gordy, Jr., of Abbeville, for respondent.

SOMMERVILLE, J. For the reasons assigned in the case entitled Vermilion Sugar Company v. Louis Vallee, In re Louis Vallee, Applying for Certiorari or Writ of Review to the Court of Appeals, Parish of Vermilion, State of Louisiana, 64 South. 670, ante, p. 661, and numbered 20,344, this day decided.

It is ordered, adjudged, and decreed that the judgment of the Court of Appeals in this case be annulled, avoided, and reversed, and the judgment of the district court be reinstated and made the judgment of this court; costs to be paid by the plaintiff company in all courts.

PROVOSTY, J., being absent on account of illness, took no part.